IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARNHART                              *
                                      *
                                      *
       v.                             *     Civil No. JFM-16-01277
                                      *
CHESAPEAKE BAY SEAFOOD HOUSE          *
ASSOCIATES, L.L.C.                    *
                                   ******

**MEMORANDUM**

Plaintiff Morgan Barnhart ("Barnhart"), on behalf of herself and all other persons similarly situated, brings this class and collective action lawsuit against Chesapeake Bay Seafood House Associates, L.L.C. ("Chesapeake") seeking overdue wages and money damages incurred while plaintiff was employed as a server and bartender at defendant's restaurants. Plaintiff brings claims under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), MD. CODE ANN. § 3-401, *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), MD. CODE ANN. § 3-501, *et seq.*, for defendant's alleged failure to pay Barnhart and other employees the appropriate minimum wage. (ECF No. 1). Pending is defendant's motion to dismiss all claims or, in the alternative, for summary judgment. (ECF No. 16). The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, defendant's motion is denied.

**BACKGROUND**

Defendant Chesapeake operates approximately thirty-one franchised Chili's restaurants in Maryland and Virginia. (ECF No. 1 ¶ 2). Chili's is a nationwide chain, and although its locations are generally franchised to local owners, the restaurants offer a fairly uniform dining experience. (*Id.* ¶ 41). During the relevant time period, for example, Chesapeake's Chili's

1

locations shared managers and allowed servers and bartenders to work at multiple restaurants. (*Id*. ¶ 43–44). Across locations, Chesapeake pays its "tipped employees" - employees receiving more than the statutory minimum amount in tips per month - less than the hourly minimum wage, as permitted by the tip credit provisions of FLSA and MWHL. (*Id*. ¶ 3). Defendant considers servers and bartenders tipped employees for the purposes of FLSA's and MWHL's tip credit provisions. (*Id*.). Plaintiff Barnhart estimates that Chesapeake employed roughly 1,000 tipped employees in the state of Maryland throughout the limitations period. (*Id*. ¶ 21).

Chesapeake employed Barnhart as a tipped employee for over two years. (*See id.* ¶ 32). Barnhart began her employment with Chesapeake in June 2013 as a server in defendant's Linthicum, Maryland location. (*Id*.). For a short portion of her employment, Barnhart also worked a closing shift at Chesapeake's restaurant in Arundel Mills. (*Id*.). Approximately one year after beginning her employment with Chesapeake, Barnhart began working as a bartender as well as a server. (*Id*. ¶ 34). Barnhart also worked periodically as a "QA," an expeditor position responsible for the final stages of food preparation. (*Id*. ¶ 35). As a tipped employee, Barnhart was paid less than minimum wage at a rate of approximately $3.63 per hour when performing her role as a server or bartender. (*Id*. ¶ 36).

Though Chesapeake paid Barnhart and other servers and bartenders according to the tip credit provisions of FLSA and MWHL, Barnhart contends that she spent between thirty and fifty percent of her shift time performing duties in which she did not interact with customers and did not have the opportunity to earn tips. (*Id*. ¶ 39). According to Barnhart, she and other individuals classified as "tipped employees" were required to spend a substantial portion of their shifts attending to tasks such as setting up, stocking, and/or breaking down the soda, chip, and soup machines, cleaning floors and restaurant surfaces, removing cigarette butts from the bushes

outside of the restaurant, preparing the restaurant for pest exterminators, and taking out the trash. (*Id*. ¶ 40). Some of these non-tipped duties were specified in a checklist posted at Chesapeake's restaurant locations, and completion of the checklist by servers and bartenders was verified by the managers. (*Id*. ¶¶ 46–47). Additionally, Barnhart alleges that servers and bartenders were often required to arrive at the restaurants thirty minutes to an hour early and perform non-tipped work before the restaurants were open to customers. (*Id*. ¶ 49). Servers and bartenders were also required to perform non-tipped work after the restaurants were closed to customers. (*Id*. ¶ 50).

To Barnhart's knowledge, Chesapeake did not have any sort of institutionalized internal policy prohibiting tipped employees from performing certain types of non-tipped work unrelated to their role or from performing excessive amounts of non-tipped work. (*Id*. ¶ 51). Furthermore, Chesapeake did not track or record the amount of time servers and bartenders spent performing tipped versus non-tipped work during their shifts. (*Id*. ¶ 52). According to Barnhart, Chesapeake did not allow employees to clock-in at the full minimum wage rate when performing non-tipped work, even though their point-of-sale time management system would have allowed the defendant to easily record tipped and non-tipped time and adjust the wage accordingly. (*Id*. ¶¶ 53, 56–57).

Barnhart filed a class and collective action complaint in this court on April 28, 2016. The complaint asserts three claims against Chesapeake: violation of Section 201, *et seq.* of the FLSA (Count I), violation of Section 3-401, *et seq.* of the MWHL (Count II), and violation of Section 3-501, *et seq.* of the MWPCL (Count III). (*Id*. ¶ 1).[1] Chesapeake filed a motion to dismiss all

---

[1] I do not, at this stage, render an opinion regarding the collective action issue under the FLSA or plaintiff's request for Rule 23 class certification under the MWHL and the MWPCL, as these issues have not yet been fully briefed by the parties.

claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56 on June 23, 2016. (ECF No. 16).

## STANDARD

Chesapeake has filed a motion to dismiss Bales' first amended complaint under Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). I consider this motion as a motion to dismiss under Rule 12(b)(6).[2] In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The complaint must allege facts sufficient to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). The court is not, however, required to accept the legal conclusions derived from the facts, and "[a] complaint that provides no more than labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient to meet the pleading standard. *Twombly*, 550 U.S. at 555; *see also Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (stating that the "mere recital of elements of a

---

[2] In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may not generally consider extrinsic evidence. Where, however, "a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). An integral document is a document that by its "very existence, and *not the mere information it contains,* gives rise to the legal rights asserted." *Walker v. S.W.I.F.T. SCRL,* 517 F.Supp.2d 801, 806 (E.D. Va. 2007) (emphasis added). In addition to integral and authentic exhibits, on a 12(b)(6) motion the court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)"). Generally, a motion to dismiss for failure to state a claim "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *see also Tobey v. James*, 706 F.3d 379, 387 (4th Cir. 2013).

## ANALYSIS

Barnhart uses the same alleged facts to support both her federal claim and her state law claims. I will analyze plaintiff's claim under the FLSA before turning to her parallel state claims under the MWHL and the MWPCL.

### I.   Barnhart's claim under the FLSA

Plaintiff Barnhart asserts two alternative bases for relief under FLSA.[3] First, Barnhart contends that she and other tipped employees were required to spend a significant amount of time performing work that was unrelated to their roles as servers or bartenders, and were thus working "dual jobs" as defined by FLSA regulations. (*See* ECF No. 1 ¶¶ 6, 70). Because Barnhart was employed in a "dual job," she is entitled to the full minimum wage for the hours spent performing the unrelated duties. Second, Barnhart argues that even if the non-tipped duties she performed can be construed as "related" to her occupation as a server or bartender, the time spent performing these duties exceeded 20% of her weekly hours. (*See id*. ¶¶ 7, 71). Accordingly, Barnhart claims, Chesapeake was not entitled to take advantage of the tip credit provisions of FLSA for the time she spent performing non-tipped duties.

---

[3] Plaintiff Barnhart originally alleged in her complaint that Chesapeake violated FLSA by failing to inform her of its intention to utilize the tip credit provision. (ECF No. 1 ¶ 72). Defendant has provided a copy of Barnhart's employee tax form, which she signed acknowledging Chesapeake's tip credit policy. (ECF No. 16, Ex. A). Plaintiff has since stated that she does not oppose dismissal of her failure to inform claim. (*See* ECF No. 19, p. 21). Accordingly, the notice portion of Barnhart's FLSA claim is dismissed.

Defendant Chesapeake contends that Barnhart has not stated a "dual jobs" claim under FLSA because Chesapeake only utilized the tip credit provision for her work as a tipped employee and because any non-tipped duties she performed were directly related to her server and bartender occupations. (*See* ECF No. 16, p. 3). Moreover, Chesapeake argues, Barnhart's "20% theory" regarding the quantitative limit on a tipped employees related non-tipped duties is not a cognizable ground for relief under FLSA or relevant DOL regulations. (*Id*.). Chesapeake claims that the 20% limitation is derived from a piece of DOL interpretive material that is entitled to no deference by the courts and that such a limitation would be impracticable for employers. (*Id*. at pp. 3, 19, 29).

    a. *Statutory framework*

Section 206 of FLSA requires covered employers to pay all employees a minimum wage for hours worked, unless the employee qualifies for a statutory exemption. *See* 29 U.S.C. § 206(a). Employers may, however, pay employees less than the federal minimum wage if the employee is engaged in an occupation which regularly receives tips. *See* 29 U.S.C. § 203(m). Section 203(t) defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). As this court has explained, "[t]ipped employees . . . are required to receive at least the minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a 'tip credit' to meet the $7.25 per hour minimum wage requirement." *Gionfriddo v. Jason Zink, LLC*, 769 F.Supp.2d 880, 893 (D. Md. 2011). In essence, FLSA's requirements are satisfied when the difference between the $2.13 paid to the employee and the $7.25 minimum wage is made up for by the tips received by the employee. *See id*.; *see also Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680 (D. Md. 2012). In order to utilize the tip credit loophole under

the statute, "during the relevant time frame the employer [is] required to (1) inform the employee that the tip credit was being claimed; and (2) allow the employee to retain all tips he or she received . . . ." *Dorsey*, 888 F. Supp. 2d at 681 (quoting *Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 175 (D.D.C. 2011). The requirements for claiming the tip credit under the statute are "strictly construed." *Id.* (citing *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 287 (S.D.N.Y. 2011).

The Department of Labor (DOL) has issued a number of regulations clarifying the tip credit requirements under FLSA. First, the DOL reiterates that an individual only qualifies as a "tipped employee" within the meaning of the statute "when, in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly total more than $30 a month." 29 C.F.R. § 531.56(a). "'[C]ustomarily and regularly' signifies a frequency which must be greater than occasional, but which may be less than constant." 29 C.F.R. § 531.57. Employers may only take advantage of the tip credit for hours during which a given employee is engaged in a tipped occupation. *See* 29 C.F.R. §531.59(b). Importantly, the DOL regulations also distinguish between a situation in which a tipped employee spends part of his time performing ancillary duties that are not themselves tip-producing but are directly related to his tipped occupation, and one in which an employee is employed in a "dual job." *See* 29 C.F.R. § 531.56(e). An employee is engaged in "dual jobs" if he essentially performs the duties of two distinct occupations. *See id.*[4] If an employee is employed in a "dual job," an employer may *only* take the tip credit for the hours in which the employee is engaged in the tipped occupation. *See*

---

[4] If, for example, an individual is employed as both a maintenance man as well as a waiter in a hotel, he is performing "dual jobs" for a single employer. *See* 29 C.F.R. § 531.56. A "counterman," on the other hand, who is preparing his own short orders in addition to interacting with and serving customers, is not engaged in a "dual job," and is instead performing related non-tip-producing duties in a single tipped occupation. *Id.*

*id*. If, however, an individual is employed in a tipped occupation in which he spends part of his time performing *related* duties that are not tip-producing, the performance of these ancillary duties will not alter the individual's overall status as a tipped employee, and an employer may still utilize the tip credit provision. *See id*.

The DOL's Field Operations Handbook provides further guidance on the "dual jobs" provision. *See* U.S. Dept. of Labor Field Operations Handbook, § 30d00(f) (*available at* https://www.dol.gov/whd/FOH/FOH_Ch30.pdf) (last updated 1/13/17). First, the Field Operations Handbook (FOH) confirms that employers may take the tip credit for tipped employees who spend some time performing related duties that are not themselves tip-producing. *Id*. at § 30d00(f)(2). The guidance goes on, however, to place a clear quantitative limit on the amount of related duties an employer is allowed to require. *Id*. at § 30d00(f)(3). The FOH provides that "where the facts indicate that tipped employees spend a substantial amount of time (*i.e*., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties." *Id*. In sum, the FOH clarifies that employers are not allowed to take advantage of the tip credit in two separate circumstances: (1) employees are employed in "dual jobs;" and (2) employees are engaged in a single tipped occupation, but they spend more than 20% of their time performing related duties that are not tip-producing.

    b. *Plaintiff's "dual jobs" theory*

Barnhart alleges that Chesapeake required plaintiff and other servers and bartenders to perform a litany of tasks that are "unrelated" to their roles as tipped employees, and, as a result, they are employed in "dual jobs." (*See* ECF No. 1 ¶ 6, 70). Chesapeake contends that while Barnhart and other tipped employees performed minor tasks that were not tip-producing, these

tasks were directly related to their primary occupations as servers and bartenders. (*See* ECF No. 16, p. 14 (referencing https://www.onetonline.org/link/details/35-3031.00)). The FLSA, Chesapeake argues, does not require employers to alter and individual's status as a tipped employee simply because they perform some duties ancillary to their tipped roles. (*See id.*). As long as Barnhart was engaged in her occupation as server or bartender at all relevant times, merely performing some non-tip-producing duties does not mean she was engaged in "dual jobs." (*See id.*).

The "dual jobs" provision of Section 531.56 recognizes the distinction between a tipped employee performing tasks that are not themselves tip-producing but are related to their tipped occupation, and a tipped employee who is spending time during their shift performing unrelated, non-tip-producing tasks. *See* 29 C.F.R. § 531.56(e). While Section 531.56(e) does not provide an exhaustive list of related versus unrelated tasks, it does provide some relevant examples. *See id.* As discussed in footnote 3, *supra*, if, for example an employer engages an individual as a maintenance employee and as a waiter, the employer is required to pay the employee the full minimum wage for the portion of his time spent performing maintenance work. *See id.* Conversely, a waitress who spends part of her time setting or cleaning up tables and occasionally washing dishing or a "counterman" who takes a turn preparing his own short-orders is still considered a "tipped employee" under FLSA, and can be paid the tip credit wage rate. *See id.* Courts recognize "dual jobs" claims where plaintiffs sufficiently demonstrate that while engaged by an employer as a tipped employee, they spent a portion of their time performing non-tip-producing tasks that were unrelated to their primary role and that more closely resemble tasks traditionally performed in minimum wage occupations such as a janitor or expeditor. *See, e.g.*,

*Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d. 1008, 1030 (N.D. Ill. 2012); *Mclamb v. High 5 Hospitality*, 197 F. Supp. 3d 656, 662 (D. Del. 2016).

Barnhart has alleged in her complaint that she was required by Chesapeake to perform a number of tasks that were not directly tip-producing on a regular basis. (*See* ECF No. 1 ¶ 40). While many of the tasks Barnhart lists are similar to those identified by the "dual jobs" regulation as being directly related to the role of a waitress, Barnhart's list also contains a number of duties that arguably qualify as unrelated to her tipped occupation. (*See id*.). Duties such as "mopping and/or deck brushing restaurant floors" and "removing cigarette butts from the bushes outside of the restaurant," for example, are tasks that would ordinarily be performed by a restaurant's janitorial staff. Accordingly, Barnhart has, at the pleading stage, stated a plausible claim for relief under FLSA's "dual jobs" regulation.

    c. *Plaintiff's "20% theory"*

Barnhart claims that she spent between thirty and fifty percent of her hours during a regular workweek performing tasks that, while potentially related to her roles as a server and bartender, were not tip-producing. (*See* ECF No. 1 ¶ 39). Because the time she was required to spend performing non-tip-producing tasks exceeded the quantitative limit imposed by the DOL's interpretive guidance, Barnhart contends, Chesapeake violated FLSA's minimum wage requirements. (*See id.* ¶ 21). Chesapeake argues that Barnhart's "20% theory" is not actionable as a matter of law because the FOH is merely internal guidance to investigators, the DOL's twenty percent limitation has repeatedly changed over time, and the FOH is not entitled to any degree of judicial deference. (*See* ECF No. 16, pp. 15, 17, 19). Lastly, Chesapeake claims that the FOH's 20% limitation is both impracticable and unduly burdensome for employers. (*See id.* at p. 29).

The core of the parties' disagreement with respect to Barnhart's 20% claim is how much weight should be afforded the FOH. The Fourth Circuit has yet to address this specific question; other courts, however, have examined the issue at length. In determining the level of deference owed to the FOH 20% limitation, the Eight Circuit explained first that the DOL's "dual jobs" regulation was clearly entitled to *Chevron* deference. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879 (8th Cir. 2011).[5] The dual jobs regulation, however, leaves important terms undefined, and does not explain to employers or the courts how to determine if an employee is in fact engaged in a "dual job." *See* 29 C.F.R. § 531.56(e). The regulation fails, for example, to define "related duties" or to elaborate on the impact of an employee performing related duties more than "part of the time" or "occasionally." *See Fast*, 638 F.3d at 877. With respect to the deference owed the DOL's subsequent interpretation of its "dual jobs" regulation in the FOH, the Eighth Circuit noted that "*Auer* deference is appropriate for DOL interpretations of its own regulations, where the regulations 'give specificity to a statutory scheme the Secretary [of the DOL] [i]s charged with enforcing and reflect[] the considerable experience and expertise the Department of Labor ha[s] acquired over time with respect to the complexities of the Fair Labor Standards Act." *Id*. at 878 (quoting *Gonzales v. Oregon*, 546 U.S. 243, 256–57 (2006)).[6] In concluding that the FOH's 20% limitation was entitled to *Auer* deference, the court noted that the

---

[5] Though the Eight Circuit did not engage in a detailed *Chevron* analysis, I believe the defendant's argument that the "dual jobs" regulation is not entitled to *Chevron* deference is untenable. Though the exact language of the "dual jobs" provision was not in the original text of the proposed rule, it is a logical outgrowth of the proposed rule. *See Long Island Care at Home, Ltd. V. Coke*, 551 U.S. 158, 174 (2007). As plaintiff points out, the proposed rule clearly addresses the distinction between tipped and non-tipped employees, and the "dual jobs" addition simply addresses the scenario in which and individual performs in both a tipped and a non-tipped role for the same employer. (*See* ECF No. 19, p. 11).

[6] In *Auer v. Robbins*, the Supreme Court stated that the Secretary's interpretation of its own regulations "is . . . controlling unless plainly erroneous or inconsistent with the regulation." 519 U.S. 452, 461 (1997).

temporal limit was consistent with the language of the "dual jobs" provision, other FLSA regulations, and the prior case law dealing with duties related to a tipped occupation. *See id.* at 880. Furthermore, while inconsistent interpretations over time may undermine the argument for deference to a particular piece of agency guidance, *see, e.g.*, *Christopher v. Smithkline Beecham Corp.*, 132 S.Ct. 2156, 2166 (2012), the DOL's 20% position has remained,[7] with one brief deviation, consistent for several decades, *see Mclamb*, 197 F.Supp. 3d at 663.

Though defendant points to a set of unreported cases out of the District of Arizona to support the position that the FOH is not entitled to any deference and does not create a basis for relief under FLSA, (*See* ECF No. 16, pp. 23–29 (citing *Montijo v. Romulus Inc.*, No. CV-14-264-PHX-SMM, 2015 WL 1470128 (D. Ariz. Mar. 31, 2015); *Richardson v. Mountain Range Restaurants LLC*, No. CV-14-1370-PHX-SMM, 2015 WL 1279237 (D. Ariz. Mar. 20, 2015)), these cases appear to be against the weight of authority.[8] In a District of Delaware opinion denying a motion to dismiss that relied in part on the same set of Arizona cases, the court explained that "the cases cited appear to be outlier in the current legal landscape, as a greater number of jurisdictions have given deference to the sub-regulation in question." *McClamb*, 197 F. Supp. 3d. at 663; *see also Irvine v. Wild Dunes Mgmt, Inc.*, 106 F. Supp. 3d 729, 733 (D.S.C. 2015) (stating that the 20% rule has been "widely accepted by other courts"). Indeed, the majority of courts that have considered the FOH's construal of the "dual jobs" regulation have deferred to the DOL's interpretation and recognized plaintiffs' claims under FLSA based on the

---

[7] In January 2009, the DOL issued an Opinion Letter purporting to withdraw the 20% limitation. *See* DOL Opinion FLSA 2009-23, Jan. 16, 2009, 2009 DOLWH LEXIS 27. The Opinion Letter was, however, was withdrawn only six weeks later.

[8] Chesapeake also relies in part on *Pellon v. Business Rep. Int'l.*, 528 F. Supp. 2d. 1306 (S.D. Fla. 2007). *Pellon*, however, was decided at the summary judgment stage and is therefore not directly on point at this stage of the litigation.

20% limitation. *See, e.g.*, *McClamb*, 197 F. Supp. 3d. ; *Irvine*, 106 F. Supp. 3d; *Driver*, 890 F. Supp. 2d.; *Flood v. Carlson Restaurants*, 94 F. Supp. 3d 572 (S.D.N.Y. 2015).[9]

Chesapeake's contention that the 20% limitation would be unduly burdensome and unworkable is also flawed. Certainly, requiring Chesapeake to keep track of the time their tipped employees spend performing tasks that are not tip-producing would require more vigilance, but it would not, as defendant contends, require "perpetual surveillance," (*See* ECF No. 16, p. 31). Furthermore, distinguishing between tip-producing and non-tip-producing duties is not an overly arduous task: tasks that involve direct customer interaction would fall squarely into the tip-producing category, and tasks that are not customer-facing would not. As the court in *Irvine* observes, employers "assign duties and assess completion of those duties," and it is no "real burden on an employer to require that they be aware of how employees are spending their time before reducing their wages 71%." *Irvine*, 106 F. Supp. 3d at 734. Chesapeake can choose to comply with the 20% limitation by hiring minimum-wage workers to perform the bulk of the non-tip-producing duties or by implementing a system to keep track of the tasks performed by tipped employees.

Barnhart has alleged that she spends between 30% and 50% of her work hours each week performing duties that are not tip-producing, and she has provided a detailed list of these additional responsibilities. (*See* ECF No. 1 ¶¶ 39, 40). Accordingly, at this stage, Barnhart has stated a plausible claim for relief under FLSA. Defendant's motion to dismiss plaintiff's FLSA claim is denied.

## II. Barnhart's claims under the MWHL and the MWPCL

---

[9] Contrary to Chesapeake's argument, the majority position is not undermined by the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117 (2016). *See, e.g.*, *Romero v. Top-Tier Colorado LLC*, No. 16-1057, 2017 WL 892340 (10th Cir. Mar. 7, 2017).

Maryland courts recognize that the MWHL is the "state parallel" of FLSA. *Friolo v. Frankel*, 819 A.2d 354, 361 (Md. 2003).[10] Though the courts have not yet dealt with the relationship between FLSA's "dual jobs" provision and 20% rule and the state analogue, courts have acknowledged that the state requirements directly track the FLSA requirements with respect to the minimum wage and tipped employee provisions. *See, e.g.*, *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 245–46 (4th Cir. 2016) (indicating that the requirements to be met for employers seeking to claim the tip credit were the same under both FLSA and "corresponding Maryland law," specifically Section 3–419 of the Maryland Code); *see also* MD. CODE ANN., LAB. & EMPL. § 3-419; MD. CODE REGS. 09.12.41.19 (2017). Because Barnhart has alleged facts sufficient at the motion to dismiss stage to demonstrate Chesapeake violated FLSA, she has also alleged facts sufficient to demonstrate defendant violated the MWHL.

Furthermore, as this court has explained, "paying an employee less than minimum wage, in violation of the FLSA and MWHL, constitutes an unlawful deduction" under the MWPCL. *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 774 (D. Md. 2014). When employers pay employees less than minimum wage when they were not in fact entitled to utilize the tip credit provisions of FLSA and the MWHL, they have violated their minimum wage obligations and have also, necessarily, made an unlawful wage deduction in violation of the MWPCL. *See id.* Accordingly, having concluded that plaintiff has plead facts sufficient to demonstrate Chesapeake violated FLSA and the MWHL, I conclude that Barnhart has also plead facts

---

[10] This court has also held, at the summary judgement stage, that a plaintiffs demonstration of FLSA violations necessarily means plaintiffs have demonstrated parallel MWHL violations. *See Gionfriddo*, 769 F. Supp. 2d at 895 ("The arguments propounded by Plaintiffs on this [MWHL] count essentially mirror those made with respect to the FLSA . . . In light of the congruent nature of the FLSA and the MWHL . . . this Court must conclude that the MWHL was also violated as a result of [defendant's] participation in the employee tip pool.").

sufficient to demonstrate defendant violated the MWPCL. Chesapeake's motion to dismiss Barnhart's claims under both the MWHL and the MWPCL is, therefore, denied.

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is denied. A separate order follows.

| | |
|---|---|
|    3/31/2017 |    /s/ |
| Date | J. Frederick Motz |
| | United States District Judge |